IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 20 CR 257 |
| v. ) | Hon. Martha M. Pacold |
| ) | |
| AMBER PELTZER ) | |
| ) | |

**MOTION TO WITHDRAW PLEA AND DISMISS THE INDICTMENT
ON SECOND AMENDMENT GROUNDS**

Defendant Amber Peltzer, by her attorneys, Michael B. Nash and Lisa L. Wood, moves to withdraw her guilty plea on the ground that 18 U.S.C. §922(g)(1) is unconstitutional as applied to her and she is therefore legally innocent of the crime charged. The Supreme Court's "text and tradition" approach to the Second Amendment, outlined and explained in *Atkinson v. Garland*, No. 22-1557, 2023 WL 4071542 (7th Cir. June 20, 2023), *United States v. Bullock*, --- F. Supp. 3d ----, 2023 WL 4232309 (S.D. Miss. June 28, 2023), *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc), and *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), compels the conclusion that §922(g)(1) is unconstitutional as applied to Ms. Peltzer and the Court should dismiss this case with prejudice.

**PROCEDURAL BACKGROUND**

On June 1, 2020, the government filed a complaint against Ms. Peltzer, charging her with being a felon in possession of a firearm. Dkt. 1. The grand jury later returned an indictment on June 10, 2020. Dkt. 5. On June 9, 2023, Ms. Peltzer entered a plea of guilty to Count One of the indictment. Dkt. 106.

1

On June 7, 2023, the Third Circuit became the first federal appellate court to hold 18 U.S.C. § 922(g)(1) unconstitutional in an as-applied challenge. *See Range*, 69 F.4th 96. The *Range* opinion interpreted the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Subsequently, on June 20, 2023, the Seventh Circuit issued its opinion in *Atkinson v. Garland*, No. 22-1557, where it held that the government's historical analysis of the constitutionality of Section 922(g)(1) fell "well short of *Bruen*'s demands." While *Atkinson* ultimately remanded the case to allow the government to attempt to develop more persuasive historical evidence, the decision also established that the government has so far failed to "affirmatively prov[e] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at *5 (quoting *Bruen*, 142 S. Ct. at 2127).[1] As a result of these developments, Ms. Peltzer moves to withdraw her guilty plea and dismiss the indictment against her.

## ARGUMENT

After a guilty plea is accepted, a defendant may withdraw it upon the showing of a "fair and just reason for requesting the withdrawal." Fed.R.Crim.P., Rule 11(d)(2)(B); *see also United States v. Bennett*, 332 F.3d 1094, 1099 (7th Cir. 2003); *United States v. Bradley*, 381 F.3d 641, 644-45 (7th Cir. 2004). The Seventh Circuit has long held that legal

---

[1] The Eighth Circuit has come to the opposite conclusion of the en banc *Range* court and found the government's historical evidence to be sufficient to support the constitutionality of Section 922(g). *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023). But while Judge Wood's dissent in *Atkinson* would have followed the Eighth Circuit's lead, the *Atkinson* majority refused to do so.

innocence is a fair and just reason for withdrawing a guilty plea. *United States v. Gomez-Orozco*, 188 F.3d 422, 425 (7th Cir. 1999); *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993). Ms. Peltzer asserts that because the statute of her conviction is unconstitutional, she is legally innocent and should be allowed to withdraw her plea.

Ms. Peltzer submits that recent jurisprudence makes clear that §922(g)(1) is unconstitutional as applied to her. In its 2022 decision in *New York State Rifle & Pistol Ass'n v. Bruen*, the Supreme Court rejected the "intermediate scrutiny" framework that many appellate courts, including the Seventh Circuit, had previously applied to Second Amendment challenges. *Bruen,* 142 S. Ct. at 2127 (rejecting the two-step test set out in *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) because it "involved one step too many"). In its place, the *Bruen* Court explained that

> the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 51 n.10 (1961)).

In its recent holding in *Atkinson*, the Seventh Circuit acknowledged both that *Bruen* abrogated its previous precedents applying a two-step test and that the government may defend the constitutionality of a gun regulation only "by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Atkinson*, at *1 (citing *Bruen* at 2126).

Here, Ms. Peltzer's conduct—the possession of a firearm—is covered by the plain text of the Second Amendment and is presumptively protected by the Constitution. As a result, the government can only prevail if it can "*affirmatively prove* that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* at 2127 (emphasis added); *see also Atkinson* at *1. But it cannot. In fact, the historical record from the time of the founding demonstrates the exact opposite: Laws prohibiting felons from bearing arms did not begin to appear, in any form, until the twentieth century. See C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 708 (2009) ("Though recognizing the hazard of trying to prove a negative, one can with a good degree of confidence say that bans on convicts possessing firearms were unknown before World War I."). This historical evidence means that the government cannot carry its burden to establish the constitutionality of Section 922(g)(1) as applied to offenders like Ms. Peltzer.

**A.     The plain text of the Second Amendment covers conduct criminalized by Section 922(g)(1).**

The Second Amendment protects "the right of the people to keep and bear arms[.]" U.S. Const. amend. II. As the Supreme Court has explained, this plain language "guarantee[s] the individual right to possess and carry weapons[.]" *D.C. v. Heller*, 554 U.S. 570, 592 (2008). Supreme Court precedent also indicates that individuals who have prior felony convictions are part of "the people" protected by the Second Amendment.

Specifically, in *Heller*, the Supreme Court noted that the term "the people" appears not just in the Second Amendment, but in the First and Fourth Amendments as

4

well. *Id.* at 579. And the *Heller* Court found that the repeated use of this term reflected a consistent meaning—namely, that "[a]ll three of these instances unambiguously refer to individual rights, not 'collective' rights, or rights that may be exercised only through participation in some corporate body." *Id.* Based on this, the *Heller* Court held that the language of the clause creates "a strong presumption that the Second Amendment right is exercised individually *and belongs to all Americans*." *Id.* at 581 (emphasis added).

And while the *Heller* decision also included dicta emphasizing the Second Amendment's protections for "law-abiding, responsible citizens," *id.* at 635, the Seventh Circuit has rejected the notion that this dicta limits the scope of the Second Amendment. Specifically, in *United States v. Meza-Rodriguez*, issued prior to *Bruen*, the Seventh Circuit held that:

> While some of *Heller*'s language does link Second Amendment rights with the notions of "law-abiding citizens" and "members of the political community," *see Heller*, 554 U.S. at 580, 625, 128 S.Ct. 2783, those passages did not reflect an attempt to define the term "people." We are reluctant to place more weight on these passing references than the Court itself did.

*United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015). Instead—following the actual holding of the *Heller* decision—the Seventh Circuit has concluded that "the term 'the people' in the Second Amendment has the same meaning as it carries in other parts of the Bill of Rights[.]" *Id.* at 670.

Nothing in the Supreme Court's recent *Bruen* decision casts doubt on the understanding articulated in *Meza-Rodriguez*. Indeed, *Bruen* reiterated *Heller*'s holding that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions."

5

*Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581). And while *Bruen*—like *Heller* itself—also contained dicta emphasizing the Second Amendment's protections for "law abiding, responsible citizens," those passages do not purport to define (much less to redefine) the term "the people." As a result, for the reasons the Seventh Circuit already identified in *Meza-Rodriguez*, the Court should find "the people" protected by the Second Amendment are the same as those protected by the First and Fourth Amendments. That means that Ms. Peltzer is presumptively covered by the Second Amendment's plain text. See, e.g., *Bullock*, *47-48 (concluding that the Second Amendment applies to all felons who possess weapons); *Range*, 69 F.4th at 101-103 (same).

The Third Circuit reached this same conclusion in its recent *en banc* opinion in *Range*. 69 F.4th at 101-103. There, the appellate court cited four reasons why the "law-abiding" language was dicta and did not compel a conclusion that felons fall outside the "people" to whom the Second Amendment refers. First, the court noted that the criminal histories of the plaintiffs in *Heller*, *McDonald v. Chicago*, 561 U.S. 742, 780 (2010), and *Bruen* were not at issue. *Id*. at 101. Second, the court pointed to *Heller's* discussion of the term "the people" in multiple amendments. It reasoned that "[u]nless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among 'the people' for Second Amendment purposes would exclude him from those rights as well." *Id*. at 102. The *Range* court saw "no reason to adopt an inconsistent reading of 'the people.'" *Id*.

6

Third, the *Range* court cited then-Judge Barrett's reasoning in her dissent in *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019), where she "persuasively explained that 'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Range* at 102 (citing *Kanter*). The court also endorsed its own previous precedent stating that the idea that "individuals with Second Amendment rights may nonetheless be denied possession of a firearm is hardly illogical." *Id.* (citing *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 344 (3d Cir. 2016)); *see also United States v. Rahimi*, 61 F.4th 443, 451-52 (5th Cir. 2023) (endorsing then-Judge Barrett's interpretation of the phrase "the people" as consistent with *Heller* and *Bruen*).

Finally, the *Range* court pointed to the expansiveness of the phrase "law-abiding," asserting that the Supreme Court could not mean that any individual who ever ran afoul of any law, however minor, could be excluded from the protections of the Second Amendment. *Range*, 69 F.4th at 102. It also took issue with the vagueness of the phrase "responsible," noting that such a term was susceptible to many different interpretations. *Id.*; *see also Rahimi*, 61 F.4th at 453 ("Under the Government's reading, Congress could remove 'unordinary' or 'irresponsible' or 'non-law-abiding' people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? One easily gets the point[.]"). Ultimately, the *Range* court disagreed with the government's characterization of the scope of the phrase "the people" within the text of the Second Amendment because it

7

would essentially delegate to the legislature who receives the protection of the Second Amendment.

This Court should find, consistent with *Meza-Rodriguez, Bullock,* and *Range*, that the Second Amendment extends to individuals with prior felony records.

**B.    The government cannot carry its burden to establish that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."**

Because the plain text of the Second Amendment covers the conduct criminalized by Section 922(g)(1), the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130; *Atkinson*, at *2.[2] The government cannot meet that burden because the historical record demonstrates that there is no longstanding tradition of preventing felons from possessing guns.

In *Atkinson*, the Seventh Circuit was presented with a record developed before the *Bruen* opinion was issued. In deciding to remand to the district court for further briefing, the Seventh Circuit acknowledged that "the government's brief before us includes some historical analysis," but stated that the record was "nothing close to what would satisfy the demanding standard set forth in *Bruen*." Atkinson at *3. In its briefing, the government had provided the court with "some Founding era commentary," and explained that "that felons … were historically subject to execution and estate forfeiture,

---

[2]    As noted above, prior to the Supreme Court's opinion in *Bruen*, the Seventh Circuit rejected challenges to § 922(g)(1) under the means-end inquiry after determining that the historical record on felons possessing firearms was "inconclusive." *See, e.g., Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019); *Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019). The means-end test was abrogated in *Bruen*.

8

as well as the loss of other civic rights." *Id.* Given the *Atkinson* court's statement this type of information "falls well short of *Bruen's* demands," *id.*, the burden is on the government to make a more substantial showing before this court.

The defense asserts that the government will be unable to meet this burden because the historical evidence instead shows a *lack* of a tradition restricting felons from gun ownership. Two prescient dissents from the pre-*Bruen* era—which largely predicted *Bruen* and which exhaustively canvassed the historical record—firmly demonstrate that felon-in-possession laws do not have historical support. *See Kanter v. Barr*, 919 F.3d at 454 (7th Cir. 2019) (Barrett, J., dissenting) ("at least thus far, scholars have not been able to identify any such laws" barring offenders from possessing firearms); *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 915 (3d Cir. 2020) (Bibas, J., dissenting) ("I cannot find, and the majority does not cite, any case or statute from that era that imposed or authorized such bans.").

Under *Bruen*, that lack of regulation is itself entitled to substantial weight. In *Bruen*, the Supreme Court held that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. That is the situation here. Crime and recidivism are general societal problems that have existed throughout history. But American society did not traditionally respond to these problems by barring all felons from possessing guns.

This conclusion is consistent with the position adopted by the Third Circuit in

9

*Range*. There, the government and amici relied on a 1961 law restricting firearm ownership, and other similar, slightly older laws. The Third Circuit rejected these laws as analogues, stating that it was "confident that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right." 69 F.4th at 104.

Nor did the Third Circuit accept other older historical analogues proffered by the government that prohibited firearm ownership based on race and religion. The *Range* court noted, first, that those restrictions would be unconstitutional today, and second, that the government is required to analogize those prohibited groups to the individual at issue (in that case, Mr. Range). *Id*. at 104-105. The government failed to carry this burden as to Mr. Range, and in this case must be held to that strict burden as to Ms. Peltzer.

And while the majority opinion in *Range* included language stating that its opinion was a "narrow" one, *id.*, it is clear that the reasoning of the opinion is more broadly applicable. The dissent in that case recognized as much, acknowledging that "the analytical framework [the majority has] applied to reach their conclusion renders most, if not all, felon bans unconstitutional." 69 F.4th at 113 (J. Shwartz, dissenting). This Court should apply that same analytical framework, which leads to the inevitable conclusion that, under the Supreme Court's "text and tradition" approach to the Second Amendment, Section 922(g)(1) is unconstitutional as applied to Ms. Peltzer.

10

## CONCLUSION

Amber Peltzer is covered by the plain text of the Second Amendment. The historical record demonstrates that laws prohibiting felons from possessing arms did not appear until the 20th Century. At the time that the Second Amendment was ratified, there were not any felon-in-possession laws on the book, nor were there any other firearms restrictions that were meaningfully similar to Section 922(g)(1). For those reasons, the Court should find that Section 922(g)(1) is unconstitutional as to Ms. Peltzer and grant her motion to withdraw her plea and dismiss the indictment.

Respectfully submitted,

**s/ Lisa L. Wood**
**LISA L. WOOD**


| | |
|---|---|
| Attorney Name | Lisa Wood |
| Firm Name | Lisa Wood Law, LLC |
| Attorney for | Amber Peltzer |
| Firm Address | 53 W. Jackson Blvd., Suite 1424, Chicago, IL 60604 |
| Firm Phone | (872) 888-7089 |
| Attorney No. | 6304324 |

11